UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No. 3:09-CR-66 | |
| | ) | (VARLAN/SHIRLEY) | |
| MICHAEL M. RYERSON, | ) | | |
| | ) | | |
| Defendant. | ) | | |

## <u>REPORT AND RECOMMENDATION</u>

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court, as may be appropriate. This matter comes before the Court on Defendant Michael M. Ryerson's Motion to Suppress [Doc. 19], filed on August 28, 2009, and defendant's second Motion to Suppress [Doc. 23] filed on September 28, 2009. The government responded to these motions on September 9, 2009 [Doc. 20] and October 13, 2009 [Doc. 25], respectively. A motion hearing was originally held on the first Motion to Suppress on September 17, 2009, at which time defendant's attorney orally moved for a <u>Franks</u> hearing in light of additional discovery recently received. Both counsel requested additional time to prepare. As a result the motion hearing was rescheduled for October 29, 2009. The defendant was to file his written motion for a <u>Franks</u> hearing by September 28, 2009, and the trial was continued to January 25, 2010. The events and results of this hearing are set forth in the Court's Order of September 18, 2009 [Doc. 22].

A hearing on both Motions to Suppress and on the request for a <u>Franks</u> hearing was held on October 29, 2009, and the Court took the matters under advisement on October 30, 2009.

# I. BACKGROUND

The defendant is charged in a Superseding Indictment [Doc. 11] with distribution of methamphetamine on April 23, 2009 (Count 1), and April 24, 2009 (Count 2), with manufacturing and possession with intent to distribute fifty grams or more of methamphetamine on April 27, 2009 (Count 3), with possession with intent to distribute methamphetamine on April 27, 2009 (Count 4), with possession of equipment, chemicals, products and materials to manufacture methamphetamine knowing, intending and with reasonable cause to believe these items would be used to manufacture methamphetamine on April 27, 2009 (Count 5), with knowingly possessing a firearm in furtherance of the drug trafficking crimes alleged in Counts 3, 4, and 5 on April 27, 2009 (Count 6), and with being a felon in possession of a firearm on April 27, 2009 (Count 7).

The Motions to Suppress focus on two search warrants issued on April 25, 2009, and the supporting affidavits. The first search warrant authorized the search of "a grayish and white mobile home" located at 1052 Goins Chapel Road, Tazewell, Tennessee [Exhibit A] (referred to herein as the "mobile home search warrant") and the second search warrant authorized the search of a barn located on Ridge Road in Tazewell, Tennessee [Exhibit B] (referred to herein as the "barn search warrant"). Both search warrants were issued pursuant to similar affidavits signed, and sworn to, by Detective Melvin Bayless of the Claiborne County Sheriff's Office.

# II. ANALYSIS

## A. The <u>Franks</u> Hearing Issue

The Court initially notes that during the October 29, 2009 hearing, the defendant withdrew his request for a <u>Franks</u> hearing. Accordingly, it is and was denied. However, out of an abundance

2

of caution and in the event that the defendant later seeks to raise the issue, this Court will address the matter on its merits.

The defendant first raised the issue of a <u>Franks</u> hearing in an oral request at a hearing on September 17, 2009. The government requested additional time to respond due to lack of notice. The defendant was given until September 28, 2009, to file a written motion for a <u>Franks</u> hearing.

On September 28, 2009, the defendant did file a motion [Doc. 23], but it was styled as a Motion To Suppress and basically reiterated the request to suppress evidence resulting from "the search of a residence and barn located at 1052 Goins Chapel Road, Tazewell, Tennessee on April 25, 2009." The motion contained no request for a <u>Franks</u> hearing. However, on the same day, the defendant filed a Memorandum in Support of Motion to Suppress [Doc. 24], which primarily reiterated the defendant's claim that the affidavit in support of the request for the search warrant was insufficient to establish probable cause due to the lack of reliability of the confidential informant (hereinafter "CI"). However, on the last page of the defendant's memorandum, he raised <u>Franks</u> issues, alleged the affiant made false statements, and alleged the CI was intimidated or coerced into participating and fabricated information. Defendant did not set forth any specific allegation in the search warrant affidavits that he claimed to be false. Defendant did state that there was "no information in the recordings of defendant 'controlling' any of the buys or being at the location of any of the buys", and that "the person talking about a 'firearm' is actually talking about a holster" that belongs to the confidential informant." The defendant also stated his position was supported by the transcripts of the CI's conversations, the search warrants, and the affidavits. Defendant attached copies of both search warrants, with photos of the mobile home, barn, and affidavits by Detective Bayless, as well as what were later identified as transcripts of recorded conversations of

3

the controlled buys, which were transcribed by defendant's investigator Thomas Ham. The first transcript involved a controlled buy of methamphetamine by the CI on April 23, 2009, between 5:55 p.m. and 6:30 p.m. [Doc. 24-3, 12 pgs.]. The second transcript involved an attempted controlled buy by the CI on April 23, 2009, between 8:30 p.m. and 9:51 p.m. [Doc. 24-4, 19 pgs.]. The third transcript involved an attempted controlled buy and repayment for an earlier buy, by the CI on April 26, 2009, between 9:30 p.m. and 10:06 p.m. [Doc. 24-5, 8 pgs.]. No affidavits other than the search warrant affidavits were attached or filed. On October 28, 2009, the day before the motion hearing, defendant filed "late filed exhibits to the defendant's previously filed Second Motion to Suppress" [Doc. 26]. The attached late-filed exhibits were the affidavits of Thomas Ham and Kristal Keller, defendant's investigators.[1]

The government's response to the <u>Franks</u> issue is contained in its omnibus response [Doc. 25] to the defendant's second Motion to Suppress at pages 1 and 8-14. The government argues that the defendant's mere claims that the affidavit in support of the search warrant contains misrepresentations regarding a firearm and that the CI fabricated information is not supported by any proof. The government contends that the defendant has made no showing that there were misrepresentations or that they were material, intended to mislead, or critical to a finding of probable cause.

Generally, in determining the sufficiency of the search warrant affidavit, the Court is "concerned only with the statements of fact contained in the affidavit." <u>United States v. Hatcher</u>, 473 F.2d 321, 323 (6th Cir. 1973); <u>see also</u> <u>Whiteley v. Warden</u>, 401 U.S. 560, 565 (1971). In

---

[1]The Court notes the two investigator's affidavits are essentially identical and involve a conversation with the alleged CI.

reviewing the propriety of the search warrant, the Court considers "the evidence that the issuing magistrate had before him only 'to ensure that [he] ha[d] a substantial basis . . . for concluding that probable cause existed.'" United States v. Jones, 159 F.3d 969, 973 (6th Cir. 1998) (quoting Illinois v. Gates, 462 U.S. 213, 238-39 (1983)) (alterations in original). In other words, the Court does not look beyond the four corners of the affidavit in assessing whether it provides probable cause.

In Franks v. Delaware, 438 U.S. 154, 155, 164 (1978), the Supreme Court examined whether a defendant ever has the right, pursuant to the Fourth and Fourteenth Amendments, to contest the truthfulness of sworn statements of fact in a search warrant affidavit. Sworn affidavits in support of search warrants are, in the first instance, presumed to be valid. Id. at 171. Nevertheless, a defendant may attack the veracity of factual statements in the affidavit under certain limited circumstances:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

Id. at 155-56; see also United States v. Bennett, 905 F.2d 931, 934 (6th Cir. 1990). If the defendant makes this showing and is granted what has come to be known as a "Franks hearing," he or she must show by a preponderance of the evidence that the affiant intentionally or recklessly included false statements, which are necessary to the probable cause finding, in the affidavit. Franks, 438 U.S. at 156; Bennett, 905 F.2d at 934. If the defendant successfully makes this showing, the evidence gained as a result of the search must be suppressed. Franks, 438 U.S. at 156; Bennett, 905 F.2d at 934.

To prove the need for a Franks hearing, the defendant "must point to specific false statements

5

that he claims were made intentionally or with reckless disregard for the truth" and "must

accompany his allegations with an offer of proof," including the provision of supporting affidavits.

Franks, 438 U.S. at 156. The Supreme Court has described the showing as follows:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

Franks, 438 U.S. at 171-72.

As an initial matter the Court would reiterate that the defendant's counsel withdrew his

request for a Franks hearing at the October 29, 2009 motion hearing [Transcript, pg. 43]. As a

secondary basis, the Court would note that even considering defendant's Memorandum [Doc. 24]

as a written motion for a Franks hearing, it is not sufficient. Quite simply, other than a couple of

arguably vague allegations, there is no preliminary substantial showing that the affiant made any

false statements or recklessly disregarded the truth in his affidavit, nor that the false statements were

essential to the finding of probable cause to issue the search warrant.

Third, defendant's counsel sought to raise various additional claims of alleged falsehoods

at the hearing but presented no proof of such. The Court finds that during the course of the October

29 hearing, the defendant raised seven points[2] that he contended were misrepresentations in the

search warrant affidavits. To the best of its ability, the Court summarizes those arguments as

---

[2]Although the Court referred to ten points at the October 29 hearing, some of the defendant's contentions were repetitive or subsumed by others.

follows:

> (1) The barn affidavit falsely states in paragraph 2 that the defendant "maintains, controls, or resides at the barn on Ridge Road,"

> (2) Both search warrant affidavits misrepresent in paragraph 4 that the affiant made arrangements for the CI to purchase methamphetamine from the defendant on two occasions and that on the second occasion, the CI purchased .5 grams of methamphetamine from the defendant at the barn on April 24, 2009;

> (3) Paragraph 5 in both search warrant affidavits falsely states that the recording from April 23, 2009, contained a conversation from a person in the barn about a firearm. The defendant subsequently withdrew this contention when presented with the evidence that page 16 of the transcript of the recording mentions a pistol;

> (4) Paragraph five of the barn affidavit contains the false statement that the barn was "leased or controlled" by the defendant;

> (5) Both search warrant affidavits falsely state (in paragraph 6) that the affiant gave the confidential informant $50 in cash and instructed him to buy .5 grams of methamphetamine from the defendant on April 24, 2009. The defendant subsequently withdrew this argument;

> (6) Paragraph six of both search warrant affidavits sets forth the misrepresentation that the defendant "instructed" the CI to get .5 grams of methamphetamine from under a floor mat of a white pickup truck parked outside the barn; and

> (7) The search warrant for 1052 Goins Chapel Road is incorrect because the defendant did not live at the mobile home pictured but in a house.

For each of these points, the Court finds that the defendant either withdrew the argument during the hearing or failed to present any proof or to make a substantial preliminary showing that the statements were false such that it would permit a <u>Franks</u> hearing. Although defense counsel stated that he "had witnesses" that he could present to show that the defendant did not control the barn on Ridge Road and that the defendant did not live at the mobile home that was the subject of the search,

the offer of such evidence does not constitute the substantial preliminary showing required *before* a Franks hearing may be had.  In other words, the defendant sought to have a Franks hearing to show that he was entitled to a Franks hearing.  This does not comport with the procedure established by the Supreme Court.  See Franks, 438 U.S. at 155-56.

Furthermore, in addressing the seven arguments raised by the defendant, the Court finds as follows:

(1) The defendant offered no preliminary proof, only unsubstantiated argument and a claim that he "had witnesses" he could present on this issue.

(2) Even assuming the veracity of the double hearsay statements in the investigators' affidavits, the statements of the alleged CI indicate a self-arranged, attempted buy on *April 27, 2009* [¶7].  This does not contradict the affidavits of Detective Bayless with regard to the attempted buy on April 24, 2009.  Furthermore, April 27, 2009, was after the date that the judge issued the search warrants.  While the defendant's attorney argues that the April 27, 2009 date in the investigators' affidavits was an error, there was no showing that CI gave any other date.  Additionally, the investigators' affidavits confirm that the CI stated that he obtained drugs from a truck at the barn [¶12].  Finally, the issue of who arranged the buy in the first instance is not material to the probable cause finding.

(3) The defendant withdrew this argument after a showing that this contention was incorrect per the defendant's own transcript.

(4) See finding in (1) above.

(5) The defendant withdrew this contention.

(6) The defendant argued that he was not "instructed by Michael Ryerson" at the barn to get .5 grams of methamphetamine from under the floor mat.  The investigators' affidavits of the CI's statement say that the CI went to the barn and no one was there [¶10].  The investigators' affidavits later state that the CI found drugs in an abandoned truck at the barn [¶12].  The government argued that the recordings indicate that while the CI was en route to purchase the .5 grams of methamphetamine at the barn, Ryerson called the CI and told

8

him that Ryerson had left the methamphetamine under the floor mat. The government argued that the CI then called and so advised Detective Bayless. Unfortunately, the defendant did not attach a copy of that transcript. However, even assuming the date of April 27, 2009, was an error and that the CI meant April 24, 2009, the search warrant affidavits state at paragraph 6 that "the CS drove to the barn located on Ridge Road were [sic.] he was instructed by Michael Ryerson to get approximately .5 grams of methamphetamine under the floor mat of a white Ford F-150 pickup truck parked just outside of the barn located on Ridge Road."

The search warrant affidavits do not state that anyone, including Michael Ryerson, was there at the barn. Arguably, the search warrant affidavits could be read as the CI drove to the barn "where" (i.e., at the barn) he was instructed by the defendant to get the methamphetamine from under the floor mat of the truck. However, it could equally be read as indicating that the CI drove to the barn "where" (i.e., which was where) he had been instructed by the defendant to get the methamphetamine from the pickup truck. The fact that the search warrant affidavits can be read as the defendant instructing the CI at the barn, as opposed to on the phone, to get the methamphetamine from under the floor mat of the pickup truck at the barn does not establish a false statement and, furthermore, is not material to the probable cause determination. The investigators' affidavits do not establish any material false statements and, to the contrary, their summary of the interview with the CI appears to confirm Detective Bayless's affidavits in support of the search warrants except with regard to who "arranged" the meeting. The CI's statement to the investigators, taken in context, indicates that the CI arranged to purchase drugs from the defendant, went to the barn to pick up the drugs, and obtained them from the truck.

(7) The Court makes the same findings that it did for (1) above and, additionally, finds that even if the defendant's contention is taken as true, the defendant fails to show that he has standing to contest a search of a residence in which he disavows any interest. The defendant concedes that the search was not conducted at his house/residence but was instead conducted at a trailer that he claimed he did not live in. The defendant further conceded that the trailer that was searched was the location of the controlled buy from Casey Lamar. The Court notes that this trailer was the premises specified in the search warrant.

Therefore, the Court finds that the defendant did not make a substantial preliminary showing that a

9

false statement was knowingly and intentionally made. Accordingly, even if defendant had not withdrawn his request for a <u>Franks</u> hearing, the Court would have denied it.

## B. Sufficiency of Probable Cause

Defendant's first Motion to Suppress [Doc. 19] seeks to suppress evidence seized during the execution of the search warrant in issue on April 27, 2009,[3] on the basis that the affidavit in support of the search warrant lacked sufficient information to provide probable cause because it lacks information to support the reliability or veracity of the CI.[4] Defendant argues that the affidavit lacks information that this informant previously provided reliable information for other investigators, or that led to prior arrests, convictions or seizures of drugs. Defendant argues the affiant's statement that the informant's reliability "has been tested and verified through the use of consensual tape recording . . ." is merely conclusory and does not permit the issuing judge to independently evaluate and determine the reliability of the informant. The memorandum [Doc. 24] to defendant's second Motion to Suppress reiterates this argument and adds the contention that the <u>Leon</u> good faith exception does not apply.

The government's first response [Doc. 20] correctly notes that the overriding issue is whether the affidavit provided probable cause for the issuance of the search warrant. The government acknowledges the initial conclusory statement of the affiant in his affidavits in support of the search

---

[3]Defendant's brief alleges the search was executed on April 25, 2009, but in oral argument, this was confirmed as an error. The search warrant was signed on April 25, 2009, but the parties agreed that the search was not executed until April 27, 2009.

[4]The legal basis cited by defendant solely consists of Tennessee case law, not federal case law. Nonetheless, the Court will address this issue as one of probable cause and reliability of the CI under federal law.

10

warrants regarding the confidential informant's veracity and reliability but notes the affidavits go on to "to describe how the veracity and reliability were tested," by means of "consensual tape recordings[.]"  The government then summarizes the facts and methodology of the actual and attempted controlled buys on April 23, 2009, and April 24, 2009, wherein the CI purchased 2 grams of methamphetamine from a Casey Lamar "at the defendant's residence" on April 23, 2009, was unsuccessful in purchasing any methamphetamine later on April 23, 2009, and then on April 24, 2009, obtained .5 grams of methamphetamine from under a floor mat of a pickup truck at the barn in issue.

The government contends the CI's veracity and reliability were established by virtue of corroboration through the use of the controlled buys in which proper precautions were taken and the conversations were recorded.  The government cites to United States v. Lafonta, 2009 U.S. App. Lexis 15584, *9 (6th Cir. July 15, 2009), United States v. Hawkins, 278 Fed. Appx. 29 (6th Cir. 2008), and United States v. Coffee, 434 F.3d 887, 893 (6th Cir. 2006), in support of this position. The government also maintains that the defendant's arguments regarding the lack of a hand to hand sale from defendant are irrelevant as there was no search warrant issued for the person of the defendant.

The government argues the search warrant for the barn was sufficient because the CI went to the barn and was told to get the methamphetamine from under the floor mat of defendant's truck outside the barn that defendant controlled.  The government alleges this established probable cause that contraband or evidence of the crime would be found in the barn controlled by the defendant.

The government's response [Doc. 25] to the second Motion to Suppress reiterates its arguments that the CI was shown to be reliable in the affidavits in support of the search warrants

through corroboration via two controlled buys, recordings of the information supplied by the CI, and independent corroboration through the arrest of a pseudoephedrine purchaser. The government addressed the search warrant for the residence in this response, arguing that the first controlled purchase of methamphetamine was conducted inside the residence and was recorded. The government also argued in the alternative, for application of the good faith exception to the exclusionary rule, citing United States v. Leon, 468 U.S. 897 (1984) and Herring v. United States, 129 S. Ct. 695, 700 (2009).

Probable cause to search is "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). To make such a showing "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." Id. at 244 n.13. Thus, the Supreme Court has observed that

> probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," Carroll v. United States, 267 U.S. 132, 162, 45 S. Ct. 280, 288, 69 L. Ed. 543 (1925), that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required. Brinegar v. United States, 338 U.S. 160, 176, 69 S. Ct. 1302, 1311, 93 L. Ed. 1879 (1949).

Texas v. Brown, 460 U.S. 730, 742 (1983). In other words, probable cause is "reasonable grounds for belief supported by less than prima facie proof but more than mere suspicion." Bennett, 905 F.2d at 934. Whether probable cause to issue a search warrant exists is evaluated by looking at the totality of the circumstances. Gates, 462 U.S. at 238. Moreover, the Court would note that the issuing judge's determination that probable cause exists is entitled to "'great deference.'" United States v. Allen,, 973 (6th Cir. 2000) (quoting Gates, 462 U.S. at 236). This deferential standard promotes the

12

preference for the use of search warrants as opposed to warrantless searches.  Id.

*1. Probable Cause for the Search of the Residence*

The first issue is whether there was probable cause for the issuance of the search warrant for the search of the residence at 1052 Goins Chapel Road, Tazewell, Tennessee.  The Court finds that the defendant's argument that the search warrant affidavit lacked adequate information regarding the CI's veracity and reliability to be unavailing.  While the affidavit is lacking in evidence of past reliability, the affidavit is replete with corroborative evidence sufficient to establish the CI's reliability.  The Court notes first that the affidavit establishes that the CI conducted a controlled buy at the residence in issue on April 23, 2009.  In this controlled buy, the CI was met by the affiant before the buy and the CI and his/her vehicle was searched for drugs or money with none being found.  The CI was provided a specific amount of money and instructions on where to purchase methamphetamine.  The first controlled buy was to be at 1052 Goins Chapel Road, referred to as "the residence of Michael Ryerson."  The CI was "wired" (with a recording device).  After the buy or attempt, the CI came to a predetermined location where the CI provided the drugs purchased and any change to the affiant, his/her vehicle was again searched, the recordings were obtained, and the CI was "debriefed" on what had occurred.  The affiant listened to the recordings and confirmed the CI's veracity as to what the CI said had occurred.

The Court finds that the first controlled buy on April 23, 2009, was accompanied by the appropriate precautions both before and after the purchase so as to provide adequate corroboration. The additional fact that it was recorded and the recording reviewed and determined to confirm the CI's version of events only adds to both the CI's veracity and reliability and the affiant's

13

corroboration. Thus, the judge had sufficient evidence in the affidavit to establish the reliability of the CI and the corroboration by the affiant as to the controlled buy so as to establish probable cause to issue the search warrant for "the residence."

This leaves the remaining issue regarding the search warrant for 1052 Goins Chapel Road, raised by the defendant for the first time during the hearing on the <u>Franks</u> issue, as whether "the residence" to be searched was proper. The defendant did not raise this issue an any of his filings. Without reiterating the entirety of the arguments, the gist of defendant's argument was that the address in the warrant and affidavit, 1052 Goins Chapel Road, Tazewell, Tennessee, was not the address that was searched. Initially, the defendant argued that he did not live at 1052 Goins Chapel Road. He subsequently argued that he did live at 1052 Goins Chapel Road but that the search was actually conducted on a trailer at 1050 Goins Chapel Road and that there was no proof he lived there. The government countered by arguing that 1052 Goins Chapel Road consists of both a house and a trailer and that per the 911 database, there is no 1050 Goins Chapel Road. Further, the government contended that the search was actually conducted at the trailer, not at the house.

Because this is a four corners review of the affidavit and search warrant, the arguments of both parties cannot be considered because they fall outside the four corners of the documents. However, the Court notes these arguments go to the officers' execution of the search warrant on April 27, 2009, not the validity of the issuance of the search warrant on April 25, 2009. The search warrant affidavit notes that the affiant had been investigating drug trafficking at 1052 Goins Chapel Road, Tazewell, Tennessee, and that the affiant has independently learned the defendant frequents, maintains, controls or resides at 1052 Goins Chapel Road, Tazewell, Tennessee. Defendant's Motion to Suppress [Doc. 19] even states the search was executed at defendant's residence [Doc. 19, pg. 1].

14

The affidavit and the search warrant add the language that defendant resides at 1052 Goins Chapel Road. The affidavit indicates the controlled buy on April 23, 2009, from Casey Lamar occurred in the residence of 1052 Goins Chapel Road. There is no indication, and there is no substantial showing by defendant, prior to a Franks hearing (other than oral argument) that the sale mentioned took place anywhere other than at 1052 Goins Chapel Road. However, even if the technical address were wrong, both parties agreed that the sale took place at the mobile home on the property (whether technically 1050 or 1052 Goins Chapel Road) and that the search was conducted on this mobile home. Further, the search warrant specifically describes the property to be searched not only by directions to its driveway, but specifically describes the premises to be searched as "a singe family dwelling which is a grayish and white mobile home with a metal roof and small wooden porch on the front." [Exhibit A].

There is no evidence that the search was conducted at any place other than that described, and the parties argued that the search was conducted at the trailer so described. The defendant simply argues that it was not his residence. However, the defendant's attempts to disown living at or any connection to that mobile home would have raised a significant standing issue had he raised it in his Motion to Suppress. His assertion of no property or possessory interest in the trailer would preclude his having a legitimate expectation of privacy to contest the search or the search warrant.

Therefore, the issue of the place of the search, or "the residence" searched, not having been raised in either Motion to Suppress, should be denied on that basis alone. Further, the defendant's failure to establish standing and/or that he was an aggrieved person entitled to contest the search or search warrant would be a basis for denial. Finally, upon a four corners review, the sworn affidavit indicates a controlled buy at the premises described. Whether the purchase was from Casey Lamar

(instead of the defendant) or whether someone else resides in the trailer (other than or in addition to the defendant), the search was of a place not a person.  The search warrant was properly issued for the place where the controlled buy occurred.

## 2.  Probable Cause for Search Of The Barn

With regard to the barn search warrant [Exhibit B], the Court is in a difficult position.  The defendant's objections to the search warrant in his motions [Docs. 19 and 23] are limited, as previously noted, to the reliability of the CI, the lack of defendant's personal sales to the CI, and some allegations of false statements.  The defendant made oral arguments regarding the barn, but these were limited to claims that the defendant did not reside, control, or maintain the barn (arguing without any evidence or supporting proof that it was a "community barn") and a denial of any purchase by the CI directly from defendant at the barn.  The government's response [Doc. 20] claims there was probable cause to search the barn based on the affiant's investigation, conversations at the barn between the CI and the defendant, and the purchase of .5 grams of methamphetamine from "under the floor mat of a white Ford F-150 pickup truck parked just outside the barn located on Ridge Road." [Exhibit B,¶ 6].

The difficulty lies in the fact that none of the actual objections made by defendant in his motions or even in oral argument appear valid to suppress the evidence obtained in the search warrant.  The Court has already addressed the reliability of the CI and the alleged, but unsupported, contentions of false statements.  The defendant did not otherwise address the issue of probable cause to search  the barn.

Again performing a four corners review, the search warrant affidavit only supports a

16

controlled buy from under the floor mat of a vehicle parked outside the barn. The other references to the barn involve the CI stating no one was at the barn on his first visit [Exhibit B,¶ 5], a subsequent meeting later that day with defendant at the barn and being told defendant "didn't have anything right now (¶ 5, Exhibit B), and the visit to the barn on April 24, 2009, when the CI obtained the .5 grams of methamphetamine from the truck per instructions from the defendant. Other than these references, the only other references to the barn are the statements that the affiant has been investigating "trafficking of methamphetamine at the barn on Ridge Road" [Exhibit B, ¶ 2] and the statement "on the second occasion on April 24, 2009, confidential informant purchased approximately 0.5 grams of methamphetamine from Michael Ryerson at the aforementioned barn." This latter statement clearly references the .5 grams of methamphetamine obtained from inside a vehicle parked outside the barn.

First, the Court observes that as with the search warrant for the trailer, the defendant has the burden of establishing his right to contest the search and search warrant at issue. That is, he must show he has standing, that he is an aggrieved person as a result of the search, and that he had a legitimate expectation of privacy in the place to be searched. The defendant not only fails to establish such a right, standing, or expectation of privacy, but he also denies any control, residence, maintenance, or other property or possessory interest in the barn. As such, he lacks standing to contest the search of or the search warrant for the barn.

Moreover, the question presented for the Court by its own four corners review is whether the affidavit in support of the barn search warrant [Exhibit B] establishes a "nexus" between the items to be seized and the barn (the place to be searched). Such a nexus is required. An affidavit offered in support of a search warrant "must indicate a nexus between the place to be searched and the

evidence sought and this nexus may be established by the nature of the items and normal inferences of where a person would keep such items." United States v. Hawkins, 278 Fed. App'x. 629, 634 (6th Cir.), cert. denied 129 S. Ct. 588 (2008). The purchase of drugs within a residence provides a nexus between the residence and criminal activity. See United States v. Dyer, 580 F.3d 386, 391 (6th Cir. 2009) (finding a nexus between drug activity and the location to be searched based upon the affiant's assertion that the informant observed a drug transaction in the basement); United States v. Harris, 255 F.3d 288, 293 (6th Cir.) (holding that two controlled purchases by a confidential informant from the location to be searched was sufficient to provide probable cause), cert. denied, Taylor v. U.S., 534 U.S. 966 (2001).

The government in oral argument conceded the purchase was actually consummated by the CI obtaining methamphetamine from a vehicle outside the barn. The government argues it was defendant's truck and defendant controlled the barn. However, the search warrant affidavit does not state it was the defendant's truck. Further, there was no sale inside the barn, nor any indication of any drugs or methamphetamine being inside the barn–only in a pickup truck, which happened to be parked outside the barn. However, because of the affiant Detective Bayless' experience [Exhibit B, ¶ 1] and the affiant's statements in paragraph 7 of his affidavit, to wit:

> Based on your affiant's experience and training, dealers often use their residence and outbuildings or barns to store the Methamphetamine and Methamphetamine making materials. These drug dealers will frequently maintain at such residences, and out buildings, appurtenances, storage areas and units associated therewith and vehicles located thereon, certain property, namely quantities of Methamphetamine and Methamphetamine making materials; . . . .[,]

there is a sufficient nexus to believe that there was a fair probability that all of the items on the search warrant, except "firearms and other controlled substances," would be found in the barn. This is based

18

on the affidavit indicating the CI went to the barn on three occasions and had conversations with defendant regarding these visits and regarding the purchase of methamphetamine. The April 24, 2009 visit resulted in the CI being directed by defendant to a vehicle just outside the barn where the methamphetamine was located. The first conversation at the barn indicated that the defendant did not have anything right then due to the arrest of one of his Sudafed purchasers. As such, a discussion regarding the potential purchase of methamphetamine and the subsequent actual obtaining of methamphetamine occurred at the barn, although not technically inside it. Nonetheless, the barn reasonably appears, under the totality of the circumstances, to be a place or premises involved in the operation of dealing methamphetamine, and based on the totality of the circumstances, including Detective Bayless's paragraph 7, there was a fair probability that further evidence of criminal activity and/or contraband would be found in the barn. Accordingly, the Court finds there is a minimal nexus with the barn sufficient to find it is connected with the sale of methamphetamine and given paragraph 7 of the affidavit, there was probable cause to believe the barn was being used to store methamphetamine and the other items sought by the search warrant.

### 3.  Probable Cause for Items to Be Seized

The Court's own four corners review of the search warrants also raises the question of the propriety of the seizure of firearms and drugs other than methamphetamine from either the mobile home or the barn. The Fourth Amendment requires that "[n]o warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." U.S. Const. am. IV. The Court's review of the search warrants and affidavits calls into question whether the affidavits provide probable cause to search for firearms or

19

controlled substances other than methamphetamine.

The Courts exclusion of the right to search for firearms at the barn, is based on the sole reference in the search warrant affidavit to a firearm indicating only that the "recording contained a conversation from a person at the barn concerning a firearm affiant knows Michael Ryerson is a convicted felon and [the confidential informant] has informed the affiant he/she has seen Michael Ryerson with firearms on different occasions." The Court notes that the affidavit thus indicates a conversation "from a person," ostensibly one other than Ryerson, "concerning a firearm." There is no indication in the affidavit of what was said or that a firearm was even present. Even assuming a period should follow after "firearm" and before "affiant,"[5] the mere fact that Ryerson is a convicted felon and the CI has seen him with firearms on "different occasions" does not indicate a nexus between firearms and the barn. Further, there is nothing in paragraph 7 to indicate firearms would likely be found in barns or outbuildings, etc.

Likewise, there is nothing in the affidavit to support probable cause for, or a nexus with, a search for "other controlled substances." There is nothing indicating any controlled substances other than methamphetamine were sought, discussed, purchased, or involved. Nor is there anything in paragraph 7 to indicate that "other controlled substances" would be likely to be found.

The Court has not been advised as to what was actually seized during either of the searches and makes no ruling with regard to the propriety of any seizure pursuant to plain view. However, if a firearm or other controlled substances were seized under either search warrant, the Court finds that they were not properly seized pursuant to either search warrant and that the lack of any supporting evidence in the affidavits in support of the search warrants and lack of nexus to either the mobile

---

[5]As proffered by the government during oral argument.

home[6] or barn, makes arguments of good faith unavailing. If the only basis for seizure of "firearms" or "other controlled substances" aside from methamphetamine was pursuant to the search warrants, the Court recommends that these items should be suppressed.

## III. CONCLUSION

Therefore, it is **RECOMMENDED** that the Defendant's Motion to Suppress **[Doc. 19]** and Defendant's Second Motion to Suppress **[Doc. 23]** be **DENIED**, as the Court finds that the defendant has presented no basis for the suppression of evidence seized pursuant to the search warrants. On the other hand, the Court, upon its own review of the search warrants and supporting affidavits, recommends the suppression of any firearms or controlled substances seized pursuant to the search

---

[6]There is nothing in the affidavit relating to a firearm or other controlled substances at the mobile home or during the controlled buy at the mobile home and nothing in paragraph 7 of Exhibit A to support a search for the same.

21

warrants because it finds that the supporting affidavits fail to provide probable cause that these items

would be located at the premises to be searched.[7]

Respectfully Submitted,


___s/ C. Clifford Shirley, Jr.___
United States Magistrate Judge

---

[7]Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).

22