IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:09-CR-66 |
| | ) | (VARLAN/SHIRLEY) |
| MICHAEL M. RYERSON, | ) | |
| | ) | |
| Defendant. | ) | |

## **REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case comes before the Court following the Court's Report and Recommendation, recommending in part that any firearms "seized pursuant to the search warrants" be suppressed based on a lack of probable cause for their inclusion in the search warrants [Doc. 28].[1] Neither party filed objections to the Report and Recommendation. The government subsequently filed the instant Motion For Finding Under The Plain View Doctrine and Notice Of Intent To Introduce Evidence At Trial [Doc. 30]. In this filing, the government states that it will not appeal the Report and Recommendation, but that it intends to introduce in its case in chief, a firearm (a Sig Sauer Model Sig-pro .40 caliber pistol) recovered during the search and that it seeks a ruling that

---

[1]The Court generally found there was sufficient probable cause for the search warrants to issue, and recommended defendant's Motions to Suppress be denied. While the Court found probable cause to search for methamphetamine and items used to manufacture methamphetamine, the Court found a lack of probable cause to search for firearms or other controlled substances unrelated to methamphetamine.

1

this firearm was properly seized under the "plain view" doctrine.

The current matter and issue is technically before this Court in an unusual manner. Factually, it is unusual inasmuch as this Court ruled the firearm in issue should be suppressed to the extent it was seized pursuant to deficient search warrants. The government now seeks a ruling regarding its admissibility under a new and different theory, to wit: it was properly seized under the doctrine of "plain view." It is also factually unusual because the firearm in issue is claimed to have been in plain view despite the fact it was found in a "cubby hole" in a wall behind a cabinet in the master bathroom, after the cabinet was taken off the wall.

It is also before the Court in an unusual procedural manner. The government's filing is in part a Notice Of Intent To Introduce Evidence At Trial. Although not stated in its filing, it appears the government's filing is pursuant to Rule 12(b)(4)(A), which provides for notice of the government's intent to use evidence, at the government's discretion. This rule states that its purpose is "to afford the defendant an opportunity to object before trial under Rule 12(b)(3)(C)" (i.e., by filing a motion to suppress). In this case, the defendant has not filed a motion to suppress, nor even a response to the government's motion. Ordinarily, this would constitute a waiver as to the Notice under Rule 12(e) and as to the Motion under Local Rule 7.2. However, because the government has specifically requested affirmative relief in the Motion (in a form more akin to a motion in limine) and because the issue regarding admissibility of this firearm is important to both parties, the Court will rule on the merits of this Motion. The Court's ruling is also appropriate because this matter involves an evidentiary issue and because the defendant orally objects to the admission of this evidence.

This matter stands for all practical purposes in the same shoes as a motion to suppress

2

requiring a ruling by this Court in the form of a report and recommendation instead of by an order. Indeed, had this matter been raised by the government as an alterative means to avoid suppression in response to the original Motion to Suppress, the Court would have ruled on it in its previous Report and Recommendation.

The defendant raised an initial objection that the government's Motion is in the nature of an objection to the Report and Recommendation but comes after the fourteen-day objection period and should thus be dismissed as being filed out of time. The government responds that it does not intend to object to the Court's earlier Report and Recommendation and because this Court specifically made no finding regarding plain view, there was nothing to which it could object regarding this issue. The Court agrees with the government and finds that the Motion is not in the nature of an objection to the earlier Report and Recommendation and because this matter was specifically excepted from any ruling in the earlier Report and Recommendation, the government has established good cause for filing this matter at this time and has done so in a timely manner. In this regard, the Court observes that because the defendant has requested and been granted [Doc. 37] a trial continuance until May 17, 2010, no prejudice exists as to the defendant.

## **FACTS**

At the January 12, 2010 hearing on the Motion for Finding, the government called as the sole witness Melvin Bayless, a narcotics agent with the Eighth Judicial District Drug Task Force, who was a detective with the Claiborne County Sheriff's Department at the time of the search in question. He was also the affiant on the April 25, 2009 search warrants in issue and participated in the searches on April 27, 2009 [Doc. 28].

The long and short of Detective Bayless' testimony was that:

3

1) he knew at the time of the execution of the search warrants that the defendant was a previously convicted felon, and that this fact was specifically sworn to in both search warrants (see Government Exhibits A & B, ¶ 5). He also testified that he knew it was illegal for a previously convicted felon to possess a firearm;

2) that the search warrant for the mobile home granted authority to search the mobile home at 1052 Goins Chapel Road, Tazewell, Tennessee, for methamphetamine and items used for manufacturing methamphetamine (Exhibit A);[2]

3) that in searching the trailer, Detective Bayless began searching the master bathroom and particularly in the area of a cabinet on the wall (see photos Exhibits C, D, & E) based on a tip from his confidential informant;[3]

4) that this cubby hole was a place that methamphetamine and items to manufacture methamphetamine could have been found;

5) that upon removal of the cabinet, the firearm in question was readily apparent.[4]

## FACTUAL FINDING

---

[2] This portion of the search warrant was upheld in the Court's previous Report and Recommendation and has not been objected to by defendant.

[3] Detective Bayless' testimony on this matter was somewhat inconsistent. On direct, he testified that the confidential informant had told him of the hiding place behind the cabinet, where the confidential informant said "anything illegal would be found" and was a place where the confidential informant said he had seen methamphetamine before. On cross, Detective Bayless testified the confidential informant said to open the medicine cabinet as there might be stuff in there, as he had seen it before. On cross, he conceded that at a prior state court preliminary hearing, he had testified when he went to the medicine cabinet and opened it, it moved, leading him to remove it, after which he found the cubby hole behind it. He also conceded he did not testify then that the confidential informant had told him about the cubby hole. Irrespective of this inconsistency, and irrespective of what the confidential informant did or did not tell him, the Court finds as set forth herein later, that Detective Bayless had a right to search behind the cabinet in question.

[4] Detective Bayless testified that Exhibit C, the photo of the cubby hole, depicted the cubby hole as he found it, when he took the cabinet off the wall, and before anything was touched. The electronic red circle (made on his touch screen at the hearing) shows the firearm as he saw it (Exhibits C & D are a close up photo of the firearm).

4

The Court finds that during the search of the defendant's mobile home for methamphetamine and items used to manufacture methamphetamine, Detective Bayless removed a cabinet from the wall in the master bath and discovered a "cubby hole" behind it, containing the Sig Sauer pistol in issue. The Court further finds that the cabinet and the cubby hole behind the cabinet were places that methamphetamine and/or items used to manufacture methamphetamine[5] could have been found. The Court further finds that upon removal of the cabinet, the pistol in issue was readily apparent and in plain view and that Detective Bayless knew of its incriminating nature by virtue of his knowledge that defendant was a previously convicted felon.

## PLAIN VIEW ANALYSIS

Under the plain view doctrine:

> "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object they may seize it without a warrant."

Minnesota v. Dickerson, 508 U.S. 366, 375 (1993) (citing Horton v. California, 496 U.S. 128, 136-37 (1990)). Thus,

> [f]our factors must be satisfied in order for the plain view doctrine to apply: (1) the object must be in plain view; (2) the officer must be legally present in the place where the object can be plainly seen; (3) the object's incriminating nature must be immediately apparent; and (4) the officer must have a right of access to the object.

United States v. Garcia, 496 F.3d 495, 508 (6th Cir. 2007) (citing Horton).

---

[5] As noted in the search warrant, these could include "scales, baggies, spoons, cutting powder agents and Sudafed . . ."

5

The uniqueness of this analysis is that in virtually all the cases that have come before this Court and in the vast majority of cases researched, those items alleged to have been in "plain view" were in fact in plain view as used in the vernacular. That is, the object was observed laying, sitting, or otherwise located out in the open, subject to being seen merely by looking around an area and capable of being seen by a cursory observation. Such is not the case here. Thus, the question before this Court is essentially whether an object not in plain view, as used in the vernacular, can nonetheless be deemed to be in "plain view" in the legal sense of the term. In this case, under these facts, this Court finds that it can.

As noted previously, the vast majority of cases discussing items seized under the plain view doctrine involve items readily visible upon entry into a residence or readily observable in a vehicle or on a person. These items are usually observed merely as a result of being in proximity to them. It is hard to find a case where the factual scenario involves anything resembling the removal of a cabinet from a wall and then seeing the firearm in plain view. However, while seeing items simply sitting out in the open is characteristic of most "plain view" seizures, it is not a necessary requirement or condition.

A case with somewhat similar facts is United States v. Williams, 289 Fed. Appx. 868 (6th Cir. 2008). A search warrant was issued to search for drugs and firearms. The magistrate judge, at a suppression hearing, found there was probable cause to issue the search warrant with regard to the drugs but not the firearms. During the search, a firearm was found inside a night stand drawer. Both the District Court and the Sixth Circuit held the seizure of the firearm was lawful pursuant to the plain view doctrine. The Sixth Circuit stated "here the officers were lawfully in the home to search for drugs, and during the search, discovered the firearm in the night stand drawer.

6

The weapon was subject to seizure for the further reason that the officers knew from previous dealings that Williams was a felon." Id. at 871. The Sixth Circuit also stated "officers executing the search warrant lawfully seized the .40-caliber handgun because it was in plain view and would have been subject to seizure even if it had not been mentioned in the search warrant. In Blair, we held that 'so long as the agent is lawfully present, the discovery is inadvertent, and the incriminating nature of the item is immediately apparent,' the article may be seized." Id. (quoting United States v. Blair, 214 F.3d 690, 698 (6th Cir. 2000)).

In United States v. Berry, 184 Fed. Appx. 470 (6th Cir. 2006), the defendant gave consent to search his home for a person, including consent to search his bedroom. During the search the officers looked inside the closet and, while looking there, saw two weapons, which the Court noted were nonetheless in "plain view." Id. at 475.

It also appears to this Court that Horton not only envisioned but explained how an item might be deemed in "plain view" despite not sitting out in the open. In Horton, the Supreme Court stated:

> The criteria that generally guide "plain view" seizures were set forth in Coolidge v. New Hampshire, 403 U.S. 443, 91 S. Ct. 2022, 29 L.Ed.2d 564 (1971) . . . . The scope of that doctrine as it had developed in earlier cases was fairly summarized in [this] paragraph [] from Justice Stewart's opinion:
>
> "An example of the applicability of the 'plain view' doctrine is the situation in which the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character."

Horton, 496 U.S. at 134 (citations omitted).

Here Detective Bayless has a valid search warrant to "search a given area" (the entire mobile home) for "specified objects" (methamphetamine and items to manufacture

7

methamphetamine) and in the course of the search (looking in and behind a cabinet for drugs and/or equipment) came across some other article of incriminating character (the pistol).

Likewise, the Supreme Court stated in Horton, that if a law enforcement officer

> has a valid warrant to search for one item and merely a suspicion concerning the second, whether or not it amounts to probable cause, we fail to see why that suspicion should immunize the second item from seizure if it is found during a lawful search for the first.

Id. at 139.

Here, Detective Bayless has a valid warrant to search for "one item" (i.e., methamphetamine and items to manufacture methamphetamine) and whether or not he had a suspicion not amounting to probable cause as to the location of "a second" (i.e., a firearm), that suspicion does not immunize the "second item" (firearm) from seizure because it was found during a lawful search for the first.

Finally, the Supreme Court noted in Horton:

> In this case, the scope of the search was not enlarged in the slightest by the omission of any reference to the weapons in the warrant. Indeed, if the three rings and other items named in the warrant had been found at the outset - or if petitioner had them in his possession and had responded to the warrant by producing them immediately - no search for weapons could have taken place. Again, Justice White's concurring and dissenting opinion in Coolidge is instructive:
>
> "Police with a warrant for a rifle may search only places where rifles might be and must terminate the search once the rifle is found; the inadvertence rule will in no way reduce the number of places into which they may lawfully look." 403 U.S., at 517[.]

Id. at 141.

Thus, the Court finds that 1) Detective Bayless was lawfully in the defendant's mobile home and master bathroom by virtue of the search warrant, 2) Detective Bayless had a lawful

8

right of access to the object, by virtue of his right to look any place where methamphetamine and items of manufacturing could be located, including in a hole in the wall behind the cabinet, 3) upon removal of the cabinet, the pistol was in plain view, and 4) the pistol's incriminating nature was immediately apparent by virtue of Detective Bayless' knowledge of defendant's status as a previously convicted felon, which prohibited him from possessing such a firearm.

## **CONCLUSION**

After careful consideration of the motion, the parties' filings, oral argument, the relevant legal authorities, and for the reasons set forth herein, the Court **RECOMMENDS** that the portion of the government's filing entitled the Government's Motion For Finding Under The Plain View Doctrine and Notice Of Intent To Introduce Evidence At Trial **[Doc. 30]** constituting a motion be **GRANTED**,[6] and the Court finds that the Sig Sauer Model Sig-pro .40 caliber pistol was properly seized under the "plain view doctrine."

Respectfully submitted,

　s/ C. Clifford Shirley, Jr.　
United States Magistrate Judge

---

[6]Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).