UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 3:09-CR-66-TAV-CCS-1 |
| MICHAEL M. RYERSON, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant believes himself entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A) and has moved for appointment of counsel [Docs. 116, 118]. The government has essentially waived the threshold question of exhaustion [Doc. 117], permitting the Court to consider defendant's request on the merits. However, defendant's circumstances do not present extraordinary and compelling reasons for a sentence reduction under § 3582(c)(1)(A)(i). Nor is defendant entitled to the appointment of counsel. Accordingly, the Court will **DENY** defendant's motions.

**I.  Background**

Defendant pleaded guilty to conspiracy to manufacture, distribute, and possess with intent to distribute at least fifty (50) grams of methamphetamine and possession of a firearm in furtherance of a drug trafficking crime [Doc. 66 p. 1]. The Court sentenced him to an aggregate term of 300 months' imprisonment, the lowest statutorily-authorized sentence due to a twenty-year enhanced mandatory minimum for the drug-trafficking offense and a five-year mandatory minimum for the firearm offense [Doc. 99; *see also*

Doc. 70 p. 4]. The Sixth Circuit affirmed defendant's conviction and sentence on appeal [Docs. 102, 103].

The Bureau of Prisons reports that defendant is currently incarcerated at Federal Correctional Institute, Elkton ("FCI Elkton"), and is scheduled for release on August 16, 2030. He has moved for compassionate release under 18 U.S.C. § 352(c)(1)(A)(i) based on the spread of COVID-19 at his facility [Doc. 116]. As of June 10, 2020, the Bureau of Prisons reports that 438 inmates and seven (7) staff members at FCI Elkton have confirmed active cases of COVID-19. COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited June 10, 2020). Nine (9) inmates and no staff have died from the disease, while 163 inmates and forty-six (46) staff have recovered according to the BOP. *Id.* The government opposes defendant's motion [Doc. 117]. Defendant has replied and requested appointment of counsel [Doc. 118].

**II.     Legal Standard**

A court generally lacks "the authority to change or modify [a sentence, once imposed,] unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (citing *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). The First Step Act of 2018's amendment of § 3582(c)(1)(A) revised one such exception. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018). Prior to the First Step Act, a district court could grant relief under § 3582(c)(1)(A) only on motion of the Director of the Bureau of Prisons. Now a court may modify a defendant's sentence upon a motion by a defendant if the defendant has

2

exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on defendant's behalf or after the lapse of thirty (30) days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. § 3582(c)(1)(A). If the defendant surmounts this preliminary hurdle, the Court may grant a sentence reduction "after considering the factors set forth in section 3553(a) to the extent that they are applicable" if it finds:

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*Id.* Defendant requests relief under § 3582(c)(1)(A)(i) [Doc. 116].

**III. Analysis**

**A. Defendant's Motion for Appointment of Counsel**

Upon receipt of the government's response to his motion for compassionate release, defendant filed a motion to appoint counsel, stating he believed his initial motion would lead to the appointment of counsel [Doc. 118 p. 1]. The government has yet to respond, but the Court does not require a response to determine that appointment of counsel is unnecessary in this case. The constitutional right to assistance of counsel does not extend to motions for post-conviction relief. *Shedwick v. Warden N. Cent. Corr.*

3

*Inst.*, No. 16-3203, 2016 WL 11005052 (6th Cir. Dec. 30, 2016) ("[T]here is no right to counsel in a post-conviction action."). And, no statutory authority establishes that a defendant is entitled to counsel for § 3582(c) proceedings. *See United States v. Harris*, 568 F.3d 666, 669 (8th Cir. 2009) (holding that defendant was not entitled to appointment of counsel in his § 3582(c)(2) proceedings and "agree[ing] with the six circuits that have held that there is no right to appointed counsel in sentence modification proceedings under § 3582(c)" (citing *United States v. Young,* 555 F.3d 611, 615 (7th Cir. 2009); *United States v. Olden,* 296 F. App'x. 671, 673 (10th Cir. 2008) (unpublished); *United States v. Legree,* 205 F.3d 724, 730 (4th Cir. 2000); *United States v. Townsend,* 98 F.3d 510, 512–13 (9th Cir. 1996); *United States v. Whitebird,* 55 F.3d 1007, 1011 (5th Cir. 1995); *United States v. Reddick,* 53 F.3d 462, 465 (2d Cir. 1995); *Evans v. United States,* 46 F.3d 1135, No. 94-2779, 1995 WL 46553 (8th Cir. 1995) (per curiam) (unpublished)); *cf. United States v. Johnson*, Nos. 15-6413/16-5346, 2016 WL 10704239 (6th Cir. Nov. 21, 2016) (declining to decide whether defendant was entitled to relief under § 3582(c)(2) where "independent review of the record reveal[ed] no issues of arguable merit" but noting that "[h]istorically, there has been no such right").

In support of his motion to appoint counsel, defendant states that he is not well-versed in legal matters and does not know how to refute the government's response to his motion for compassionate release [Doc. 118 p. 1]. Specifically, defendant states that the government's response was filled with "misleading assertions," such as misrepresenting his guidelines range [*Id.*].

4

But, defendant's legal inexperience does not present a unique circumstance justifying the appointment of counsel. A compassionate release request is not a particularly complex claim factually or legally, and as the discussion below demonstrates, defendant's use of a template motion served him well in presenting the legal and factual arguments for release, even if his claim ultimately fails on the merits. Moreover, the Court does not consider the allegedly misleading assertion defendant identifies in reaching its holding. Thus, the Court does not find that defendant has identified any considerations of fundamental fairness that might justify appointing counsel in this case. *See Legree*, 205 F.3d at 730 (concluding that "fundamental fairness" did not require appointed counsel to assist defendant with his § 3582(c) motion); *see also United States v. Drayton*, No. 10-20018-01, 2020 WL 2572402, at *1 (D. Kan. May 21, 2020) (denying motion to appoint counsel related to motion for compassionate release and noting that compassionate release claims are not particularly complex factually or legally and that defendant appeared able to adequately present his claim). Accordingly, defendant's motion for appointment of counsel [Doc. 118] is **DENIED**.

### B. Section 3582(c)(1)(A)'s Preliminary Threshold to Relief: Exhaustion

Turning next to defendant's motion for compassionate release, the Court examines first whether defendant has satisfied § 3582(c)(1)(A)'s exhaustion requirement,[1] which is a mandatory prerequisite to consideration of a compassionate release request on the

---

[1] The Court uses "exhaustion requirement" throughout the opinion to refer to § 3582(c)(1)(A)'s instruction that a court may consider a motion by a defendant after the defendant has fully exhausted his administrative rights or after thirty (30) days have passed from the warden's receipt of a request to move on defendant's behalf for a sentence reduction, whichever is earlier.

5

merits.  *United States v. Alam*, No. 20-1298, 2020 WL 2845694, at *2–3 (6th Cir. June 2, 2020).  Although the government argues that the exhaustion requirement is jurisdictional, the Sixth Circuit has recently found that the provision is a non-jurisdictional "mandatory condition."  *Id.*  "When 'properly invoked,' mandatory claim-processing rules 'must be enforced.'"  *Id.* at *3 (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017)).  The only exceptions to such a mandatory claim-processing rule are waiver and forfeiture.  *Id.* (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)).

Although defendant argues erroneously that the Court can waive § 3582(c)(1)(A)'s exhaustion requirement, the government essentially acknowledges defendant has satisfied this statutory prerequisite.  Defendant states that he filed a compassionate release request with the warden of FCI Elkton on April 4, 2020 [Doc. 116 p. 3], and the government attaches defendant's request to its response [Doc. 117-1].  Defendant requested compassionate release based on his rehabilitative efforts and his argument that he would not be subject to a sentencing enhancement on his conspiracy offense if sentenced today [*Id.*].  Although the warden had not responded at the time defendant filed his motion [Doc. 116 p. 3], the government also attaches the warden's response to defendant's request, dated April 23, 2020 [Doc. 117-2].  The warden construed defendant's request as a motion based on the spread of COVID-19 at FCI Elkton and denied it because evaluation of defendant's medical records indicated he did not "meet the criteria for a compassionate release/reduction" at that time [*Id.*].

6

Case 3:09-cr-00066-TAV-CCS   Document 119   Filed 06/16/20   Page 6 of 19   PageID #: 1001

As the government contends, the compassionate release motion before the Court relies on COVID-19 to request relief and mentions the sentencing enhancement argument as "one final thought" [Doc. 116 p. 8]. The government argues this inconsistency between the basis for the request filed with the warden and the basis for the instant motion could justify denying defendant's motion with leave to refile after he files a COVID-19-related request with the warden [*Id.*]. However, it acknowledges that because the warden construed the request to rest on the grounds now offered before the Court, the Court "could thus find that Ryerson has adequately satisfied the statutory exhaustion requirement" [*Id.*].

The Court agrees that the warden's construction of defendant's request renders the difference between his original request and the instant motion immaterial to the issue of exhaustion. The text of § 3582(c)(1)(A) refers generally to a defendant's request "to bring a motion on the defendant's behalf"; it does not expressly require that the defendant's original request to the warden and his motion before the Court be identical. Moreover, because in this case the warden considered defendant's request on the principal basis offered here, the dissimilarity between the justifications for his requests does not undermine the purposes of the exhaustion requirement. As the Sixth Circuit has suggested, the exhaustion requirement promotes "an orderly system for reviewing compassionate-release applications" and does not "incentivize[] line jumping." *Alam*, 2020 WL 2845694, at *3. It also "ensures that the prison administrators can prioritize the most urgent claims" and "investigate the gravity of the conditions supporting

7

compassionate release and the likelihood that the conditions will persist." *Id.* at *4. Because the warden denied defendant's request after evaluating the primary reason for release offered here, the COVID-19 pandemic, prison administrators have already examined the "gravity of the conditions" defendant identifies and "the likelihood that the conditions will persist." Thus, the Court's consideration of defendant's motion would not disrupt the orderly system Congress established for evaluating compassionate release requests.

Yet, the Court has previously read § 3582(c)(1)(A) to require a defendant to "fully exhaust[] all administrative rights" if the warden responds to his compassionate release request within thirty (30) days. *See Bolze*, 2020 WL 2521273, at *3 (citing *United States v. Godofsky*, No. 5:16-59-1, 2020 WL 2188047, at *1–2 (E.D. Ky. May 6, 2020), and *United States v. Flenory*, No. 05-80955, 2020 WL 2124618, at *3 (E.D. Mich. May 5, 2020)). The Court has also acknowledged reasonable minds may disagree as to whether a motion automatically ripens after the passage of thirty (30) days from a defendant's request to the warden. *Id.* at *3 n.3. And, although the Sixth Circuit has yet to encounter the issue presented here, it recently implied that it would read § 3582(c)(1)(A) to allow a defendant to file a motion after thirty (30) days had passed from the filing of a request with the warden, regardless of whether the warden had responded and regardless of the appeal status of a denial by the warden. *Alam*, 2020 WL 2845694, at *3 ("Prisoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them.").

8

However, because § 3582(c)(1)(A) is a non-jurisdictional provision, the Court need not decide between these competing interpretations here. Mandatory claim-processing rules are only mandatory "in the sense that a court must enforce the rule if a party 'properly raise[s]' it." *Fort Bend*, 139 S. Ct. at 1849 (quoting *Eberhart v. United States*, 546 U.S. 12, 19, 126 S.Ct. 403, 163 L.Ed.2d 14 (2005) (per curiam)). Here, the government concedes that defendant has satisfied the exhaustion requirement assuming the Court does not accept its argument about the motion's subject-matter [Doc. 116 p. 8], which the Court does not. Thus, one of the exceptions to enforcing a mandatory claim-processing rules applies: the government has waived any objection to defendant's motion on exhaustion grounds. *See Alam*, 2020 WL 2845694, at *3 (citing *Cotton*, 535 U.S. at 630). The Court may therefore consider defendant's merits argument. *Cf. id.* (finding no waiver where the government "timely objected to Alam's failure to exhaust at every available opportunity").

### C. Whether Extraordinary and Compelling Reasons Justify Relief

However, while the Court has authority to consider defendant's motion on the merits, defendant fails to establish extraordinary and compelling reasons warranting the requested sentence reduction. § 3582(c)(1)(A)(i). Complying with the mandate in 28 U.S.C. § 994(t), as authorized by § 994(a)(2)(C), the United States Sentencing Commission promulgated a general policy statement describing the circumstances that constitute "extraordinary and compelling reasons" for a sentence reduction under § 3582(c)(1)(A) and providing specific examples. USSG § 1B1.13. Section 1B1.13 of

9

the Federal Sentencing Guidelines provides a three-factor test for analyzing whether a sentence reduction is proper: after considering the § 3553(a) factors as applicable, the court may reduce a defendant's sentence if it determines as relevant here that (1) "extraordinary and compelling reasons warrant the reduction"; (2) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (3) "the reduction is consistent with this policy statement." USSG § 1B1.13.

Defendant argues that § 1B1.13 no longer constrains the Court's consideration of a compassionate release motion [Doc. 116 p. 4]. Indeed, courts disagree as to whether § 1B1.13 applies to motions by defendants under § 3582(c)(1)(A) because the policy statement refers only to motions by the Director of the Bureau of Prisons and has not been updated to reflect the First Step Act's amendment of § 3582(c)(1)(A). USSG § 1B1.13 historical n. (noting that the last amendment of this provision of the Guidelines was on November 1, 2018). Many courts have interpreted the policy statement to apply to § 3582(c)(1)(A) as amended by the First Step Act. *See, e.g.*, *United States v. Eberhart*, No. 13-cr-313, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("In the absence of controlling authority on the applicability of U.S.S.G. § 1B1.13 to motions . . . filed by defendants, and in light of the limited statutory exceptions to the general rule of finality of judgment, the court follows the guidance of the Sentencing Commission limiting the scope of 'extraordinary and compelling reasons' that warrant compassionate release." (citing *Dillon v. United States*, 560 U.S. 817, 824 (2010)), *United States v. York*, Nos.

10

3:11-CR-76; 3:12-CR-145, 2019 WL 3241166, at *4 (E.D. Tenn. July 18, 2019) (discussing the "universal" application of § 1B1.13 and noting "the Court has no reason to believe that the identity of the movant (either the defendant or the BOP) should have any impact on the factors the Court should consider"), *United States v. McGraw*, No. 2:02-CR-18, 2019 WL 2059488, at *2 (S.D. Ind. May 9, 2019) (similar), *United States v. Gutierrez*, No. CR 05-0217, 2019 WL 1472320, at *1–2 (D.N.M. April 3, 2019) (finding no "extraordinary and compelling reasons" where defendant failed to establish "serious deterioration in physical or mental health because of the aging process" under § 1B1.13 cmt. n. (1)(B)).

Other courts have held that the policy statement is inconsistent with the First Step Act, "which was enacted to further increase the use of compassionate release and which explicitly allows courts to grant such motions even when BOP finds they are not appropriate." *See, e.g.*, *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019) (holding that a court may consider extraordinary and compelling reasons other than those specified in § 1B1.13's application notes); *see also United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923 (S.D. Tex. June 17, 2019) (finding that § 1B1.13 "no longer fits with the statute and thus does not comply with the congressional mandate that the policy statement must provide guidance on the *appropriate use* of sentence-modification provisions under § 3582").

The Court agrees with the reasoning of the former group of courts and the government [Doc. 117 p. 13] that applying the policy statement to motions filed by

11

defendants, just as it applies § 1B1.13 to motions filed by the BOP, is proper absent any authoritative indication to the contrary. The First Step Act created a way for defendants to obtain expedited judicial review of a compassionate release request; it does not follow that it changed the nature of that review.

The application notes for §1B1.13 provide additional guidance for applying the first prong of §1B1.13's three-part test, describing four categories of circumstances that could present "extraordinary and compelling reasons." USSG § 1B1.13 cmt. n. 1. First, such circumstances could exist due to defendant's medical condition, if defendant is suffering from a terminal illness, or if defendant is suffering from a medical condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* at cmt. n.1(A). Secondly, defendant's age could provide extraordinary and compelling circumstances if defendant is at least sixty-five (65) years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served at least ten (10) years or seventy percent (70%) of the term of imprisonment. *Id.* at cmt. n.1(B). Third and fourth, certain family circumstances could provide reason to grant a sentence reduction, as could another extraordinary and compelling reason as determined by the Director of the Bureau of Prisons. *Id.* at cmt. n.1(C)–(D).

Because any sentence reduction must be consistent with applicable policy statements, § 3582(c)(1)(A)(ii), the fact that defendant's reasons do not fall into any of

12

these potential categories of extraordinary and compelling circumstances justifies denying defendant's motion. § 3582(c)(1)(A)(ii).

Defendant's first and principal argument is that "COVID-19 is an [e]xtraordinary and [c]ompelling [r]eason for an [i]mmediate [s]entence [r]eduction to [t]ime [s]erved" [Doc. 116]. As the government notes, the COVID-19 pandemic does not fit into any of § 1B1.13's categories and thus does not provide a basis for a sentence reduction [Doc. 117 p. 13]. As the government reasons, the policy statement directs courts to consider individual reasons for compassionate release, not general threats to incarcerated persons, much less an illness menacing "every person worldwide" [Doc. 117 p. 13]. *See* § 1B1.13 n.1; *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release").[2]

Defendant apparently tries to escape § 1B1.13's restraints by arguing that the catchall exception in § 1B1.13 cmt. n.1(D) for "other reasons" "[a]s determined by the Director of the Bureau of Prisons" allows the court to consider whether any combination of "extraordinary and compelling reasons" might exist outside those the policy statement identifies [Doc. 116 p. 4–5 (citing *United States v. O'Bryan*, No. 96-10076-03, 2020 WL

---

[2] *See also United States v. Binraymond*, No. 2:19-cr-196, 2020 WL 2110577, at *2 (S.D. Ohio May 4, 2020) (finding that defendant "failed to show that COVID-19 pose[d] a particular risk to him sufficient to constitute extraordinary and compelling circumstances" where he did not contend he suffered from a terminal illness or serious medical condition and where he had "produced no evidence indicating that the jail is not equipped to adequately address problems arising due to COVID-19"), and *United States v. Mungarro*, No. 07-2276, 2020 WL 1933816, at *2 (E.D. Mich. Apr. 22, 2020) ("The court will not release Defendant simply because she *may* contract COVID-19, and if she does, *may* experience more pronounced symptoms.").

13

869475, at *2 (D. Kan. Feb. 21, 2020), *United States v. Maumau*, No. 2:08-cr-758-11, 2020 WL 806121, at *2–3 (D. Utah Feb. 18, 2020), *United States v. Brown*, 411 F. Supp. 3d 446, 451 (S.D. Iowa 2019), and *United States v. Beck*, 425 F. Supp. 3d 573, 579–80 (M.D.N.C. 2019))]. Yet, even if the Court could recognize some combination of extraordinary and compelling reasons that fall outside those specified by the policy statement, which the text of the Guidelines does not currently authorize it to do, § 1B1.13 cmt. n.1(D),[3] the reasons defendant cites are not extraordinary and compelling. Defendant relies solely on COVID-19, an undocumented history of smoking, and a family history of diabetes and "heart issues" to support his compassionate release request [Doc. 116 p. 2, 6]. In his motion, defendant says he is forty-five years old and "lives by a

---

[3] *See also United States v. Girod*, No. 5:15-87, 2020 WL 1931242, at *2 (E.D. Ky. Apr. 21, 2020) ("By its plain language, Application Note 1(D)'s 'other reasons' determination is reserved for the Director of the BOP."), and *United States v. Hickman*, No. 6:15-42, 2020 WL 2838544, at *2 (E.D. Ky. June 1, 2020) (finding that because the catchall provision provides that "other reasons" are to be "determined by the Director of the Bureau of Prisons," the Court has no authority to find "other reasons" beyond those listed in the policy statement).

In *United States v. Hickman*, the court explained that reading the catchall provision to authorize only the BOP Director to identify "other reasons" is supported by § 3582(c)(1)(A)'s requirement that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission." 2020 WL 2838544, at *2. The Court also disagreed with courts that have argued this reading is inconsistent with the First Step Act's goal of increasing the use of compassionate release, contending that "[t]he Act achieves this goal simply by granting defendants the ability to move for compassionate release on their own" and noting that many defendants' motions "invoke the specific provisions of the policy statement rather than the catchall provision." *Id.* (citing *United States v. Lynn*, No. CR 89-0072, 2019 WL 3805349, at *2 (S.D. Ala. Aug. 13, 2019)). Moreover, the court noted, Congress has directed the Sentencing Commission, not the courts, to promulgate "general policy statements regarding . . . the sentencing modification provisions" in section 3582(c), and it has also directed that the Commission "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *Id.* at *3 (citing 28 U.S.C. § 994(a)(2)(C), (a)(2)(t)). Thus, "[if]f the policy statement needs tweaking in light of [the First Step Act], that tweaking must be accomplished by the Commission, not by the courts." *Id.* (quoting *Lynn*, 2019 WL 3805349, at *4).

14

rigorous diet and workout regimen to protect himself" from chronic medical conditions, argues he "should not be treated with less care than those inmates who haphazardly live their lives with disregard for health issues," and suggests the possibility his health could decline puts him among those with the "highest risk of serious illness or death from COVID-19" [Doc. 116 p. 2, 6]. And, in his reply, defendant states that his decades of smoking and "resultant lung damage" render him medically vulnerable [Doc. 118].[4] Defendant also argues that it is "impossible" for him to follow recommendations for preventing infection in his prison facility due to the high level of infection at FCI Elkton, the proximity in which prisoners live, and "extreme over-population" at FCI Elkton [Doc. 116 p. 2, 6, 7; Doc. 118 p. 1].

Ultimately, defendant fails to distinguish his circumstances from any number of similarly situated offenders, especially other healthy individuals in FCI Elkton, and much of the general population. The danger of COVID-19 to a healthy forty-five-year-old person with no personal history of medical conditions that might heighten his risk of severe infection cannot present an extraordinary and compelling reason alone for the

---

[4] Defendant attaches to his reply an opinion discussing the conditions at FCI Elkton pursuant to an emergency habeas action on behalf of all inmates and a "medically-vulnerable subclass" and seems to suggest that because petitioners in that suit defined the medically-vulnerable subclass to include smokers, this Court should consider defendant's history of smoking and "resultant lung damage" an extraordinary and compelling reason for release in combination with COVID-19 [Doc. 118 p. 31–51]. In fact, the court in that case found that petitioners' subclass definition was "likely too broad" and limited the subclass to "those identified by the CDC as being at higher risk," excluding from the subclass definition "those whose only risk factor is a history of smoking, given the difficulty of documenting such occurrence and identifying those individuals through BOP records alone." *Wilson v. Williams*, No. 4:20-cv-794, 2020 WL 1940882, at *6 (N.D. Ohio Apr. 22, 2020). Notably, defendant does not document his history of smoking or lung damage.

15

reasons discussed above. Although defendant states he has a history of smoking and lung damage, the CDC has not categorized individuals with a history of smoking among those groups facing a higher risk of serious illness, and defendant has not alleged or documented a more serious condition affecting his lungs, such as chronic lung disease. *See* Groups at Higher Risk for Severe Illness, Centers for Disease Control, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited May 6, 2020); *see also Bolze*, 2020 WL 2521273, at *7 (noting that a court could find defendant's medical condition, heightened by risks posed by COVID-19 "'substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility' and is one 'from which he or she is not expected to recover,' i.e. a chronic condition" (quoting USSG § 1B1.13 cmt. n. 1(A)(ii))).

While the number of active infections at FCI Elkton, 438 as of June 10, 2020, and number of inmate deaths, nine (9) as of the same date, are extremely concerning and suggest that defendant faces a high risk of infection, defendant has not shown that he faces a similarly high risk of life-threatening infection, which could represent an extraordinary and compelling reason for release. *See United States v. Turhani*, No. 1:16-cr-105, 2020 WL 2847182 (N.D. Ohio June 2, 2020) (denying motion for compassionate release because defendant at FCI Elkton had not identified "a CDC risk factor that could seriously compromise his health should he contract COVID-19" and noting he could be "an asymptomatic carrier of the virus who would pose a health threat to others should he be released or transferred"); *United States v. Black*, No. 5:18-cr-646-1, 2020 WL

16

1930149, at *3 (N.D. Ohio Apr. 21, 2020) (finding defendant at FCI Elkton failed to establish right to compassionate release because he claimed he suffered from high blood pressure and diabetes but "offer[ed] no proof, such as medical records, that would substantiate this claim"). Additionally, defendant has not alleged that the prison is unable to treat the disease adequately. Indeed, defendant states that the majority of his unit was tested for COVID-19 on Friday, May 29, 2020 [Doc. 118 p. 1], which indicates the facility, like other BOP facilities,[5] is working to combat the disease, if largely failing to prevent its spread in FCI Elkton's case.

Defendant argues secondarily and as "one final thought" that his sentence would be lower if he had been sentenced after the First Step Act's passage and appears to suggest this fact represents an extraordinary and compelling reason for release [Doc. 116 p. 8]. Defendant notes that Section 401 of the First Step Act modified the Controlled Substances Act by defining a "serious drug felony" as one for which "the offender served a term of imprisonment of more than 12 months" [*Id.* (citing First Step Act of 2018, Pub. L. No. 115-391, § 401(a)(1), 132 Stat. 5194, 5220 (2018))]. Defendant states that he did not serve time for his prior drug offense and argues the Court would impose a sentence

---

[5] *See* BOP Implementing Modified Operations, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited June 5, 2020) (describing conditions under which BOP has been operating, including suspension of social visits, suspension of inmate movement with limited exceptions, use of screening protocols for staff and inmates, suspension of legal visits, suspension of official staff travel, suspension of all staff training, with the exception of basic training for new staff, screening procedures for contractors performing essential services, suspension of volunteer visits, suspension of tours, and implementation of modified operations to maximize social distancing); *see also* A BOP COVID-19 Overview, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/overview.jsp#bop_covid-19_response (last visited June 5, 2020).

not exceeding fifteen (15) years if it resentenced defendant today [*Id.*]. The government counters that defendant essentially seeks retroactive application of Section 401, which it says would contravene explicit Congressional intent [Doc. 117 p. 17 (citing § 401(c), 132 Stat. at 5221)]. It also argues that, even assuming defendant's prior conviction would not qualify as a "serious drug felony" under the amended 21 U.S.C. § 841, subjecting him to a much shorter mandatory minimum for his drug-trafficking offense, his substantial advisory guideline range would remain unchanged due to the large quantities of pseudoephedrine he purchased [*Id.* (citing Sealed Revised Presentence Report ¶ 77 (calculating applicable range as 235 to 293 months' imprisonment)]. Defendant asserts in his reply that his guideline range would be 151–188 months [Doc. 118 p. 1].

Once again, defendant identifies a reason that falls outside § 1B1.13's categories and that would not be extraordinary and compelling in combination with the COVID-19 pandemic and defendant's health condition. The Court agrees that Congress has evidenced the intent not to make this provision of the First Step Act generally retroactive by making § 401 applicable to offenses committed before the Act's enactment only if a sentence had not been imposed as of the date of enactment. § 401(c), 132 Stat. at 5221; *see also United States v. Wiseman*, 932 F.3d 411, 417 (6th Cir. 2019) (holding that attempt to challenge sentence based on § 401 failed because defendant was sentenced prior to First Step Act's effective date and "the First Step Act is largely forward-looking and not retroactive, applying only where 'a sentence for the offense has not been imposed as of [the] date of enactment'" (citing § 401(c), 132 Stat. 5194)). Accordingly, it would

18

not be appropriate to deny other defendants a sentence reduction under Section 401 because their sentence was imposed prior to the date of enactment and yet grant defendant a sentence reduction based on Section 401's modifications under § 3582(c)(1).

Because defendant does not present reasons for release that qualify as extraordinary and compelling under the policy statement and thus under § 3582(c)(1)(A)(i), the Court does not need to consider whether "the defendant is . . . a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" or whether "the reduction is [otherwise] consistent with this policy statement." USSG § 1B1.13. Defendant's motion for compassionate release [Doc. 116] is **DENIED**.

## IV. Conclusion

Although the Court has authority to consider defendant's request for a sentence reduction under § 3582(c)(1)(A) due to the government's waiver of the exhaustion issue, it will deny the motion because defendant has not presented extraordinary and compelling reasons for release. Accordingly, defendant's motion for compassionate release [Doc. 116] and defendant's motion for appointment of counsel [Doc. 118], to the extent it could be construed as a supplemental motion for compassionate release, are **DENIED**. Defendant's motion for appointment of counsel [Doc. 118] is also **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE